## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

TOSHIKO HARPER                        :
302 Whisper Court                     :
Burlington, NJ  08016                 :
                                      :     Civil Action No.
                    Plaintiff,        :
                                      :
      v.                              :
                                      :
STATE OF NEW JERSEY,                  :
DEPT. OF HUMAN SERVICES               :
222 South Warren Street               :
Trenton, NJ  08625                    :
                                      :
                    Defendant         :

## COMPLAINT

Plaintiff, Toshiko Harper, by way of complaint against the defendant, State of New

Jersey Department of Human Services, hereby alleges and says:

## PARTIES

1.      Plaintiff is an adult resident of the State of New Jersey with a home address of

302 Whisper Court, Burlington, New Jersey  08016.

2.      Defendant is the Department of Human Services, a political subdivision of the

State of New Jersey with its headquarters located at 222 South Warren Street, Trenton NJ

08625.

## JURISDICTION AND VENUE

3.      Jurisdiction is based upon Title VII of the Civil Rights Act of 1964, as amended,

42 U.S.C. §§ 2000e, et seq and 42 U.S.C. §1983.

4.    The jurisdiction of this Court is also based upon 28 U.S.C. §§1331 and 1343, to redress the unlawful deprivation of the plaintiffs' rights, secured, guaranteed and protected by federal laws.

5.    Pursuant to 28 U.S.C. §1391(b), venue resides in the District of New Jersey where the plaintiff lives and worked for the defendant, where the defendant is located, and where incidents and occurrences giving rise to the cause of action arose.

6.    The Court may also exercise supplemental jurisdiction over state law claims set forth herein or later added pursuant to 28 U.S.C. §1367(a) and Fed.R.Civ.P. 18(a) since the state law claims form part of the same case or controversy.

7.    The plaintiff has exhausted her federal administrative remedies through the Equal Employment Opportunity Commission ("EEOC"). She has been issued a "Right-to-Sue" letter by the EEOC and is compelled to bring this lawsuit at this time to preserve her rights under the federal statutes. Exhibit "A."

8.    The plaintiff is simultaneously pursuing an appeal of her dismissal from employment through the Office of Administrative Law of the State of New Jersey pursuant to the Civil Service rules and regulations of the State of New Jersey. Exhibit "B."

## FACTS

9.    Defendant Department of Human Services (DHS) is a political subdivision of the State of New Jersey charged with overseeing the provision of healthcare services to eligible residents of the State of New Jersey including individuals with disabilities.

10.    Defendant, DHS, operates several healthcare facilities at various locations throughout the state to provide services to eligible residents. One such facility is the New Lisbon Developmental Center (NLDC) in New Lisbon, New Jersey.

11.     DHS employed plaintiff as a Senior Practical Nurse at the NLDC from February 22, 2005, until March 31, 2022.

12.     Defendant DHS is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 and the New Jersey Law Against Discrimination ("NJLAD") since it engages in interstate commerce and employed more than fifteen (15) persons during the two-year statutory time period preceding the filing of this lawsuit.

13.     DHS also acts under the color of state law for purposes of 42 U.S.C. §1983.

14.     The plaintiff is a member of the Christian faith and a follower of the Lord Jesus Christ.

15.     On or about November 23, 2021, DHS mandated that all employees must be vaccinated against the COVID-19 virus to continue their employment.  Exhibit "C." DHS established a deadline of January 4, 2022, for employees to provide proof of vaccination. Exhibit "C."

16.     In the November 23, 2021, memo setting forth the vaccine mandate, DHS specifically informed employees that while COVID-19 vaccinations had been available for some time and staff not choosing to be vaccinated for any reason had the option to be tested weekly, DHS would no longer afford testing as an option.  Exhibit "C." Exemptions would be granted going forward:

> "only to staff who can document they have a recognized medical condition(s) for which vaccines are contraindicated or have a sincerely held religious belief(s) that conflicts with the COVID-19 vaccination requirement." Exhibit "C."

17.     All requests for exemptions were due by December 3, 2021.  Exhibit "C."

18.     The plaintiff submitted her request for a religious exemption on December 2, 2021. See Exhibit "D." She cited the Holy Bible for the central tenet of the Christian faith that

the Holy Spirit, who with God the Father and Jesus Christ the Son form the Trinity Godhead. Indwells Christian believers and that the body becomes a temple of God which is to be kept undefiled. The plaintiff cited her belief that she is to rely on her natural immune system and to keep her body free from the substances contained in vaccines. Exhibit "D."

19.    Furthermore, plaintiff demonstrated her beliefs were opposed to all vaccines and that she had previously applied for and been granted exemptions from vaccination against the influenza virus in 2020 and 2021. See Exhibits "D", "E," and "F."

20.    Plaintiff agreed to comply with any required precautions or protocols in place or that may be implemented, including regular screening tests and masking, as an accommodation in order to maintain her employment. Exhibit "D."

21.    On December 9, 2021, DHS acknowledged receipt of the plaintiff's request for an exemption and allowed her to continue to work while observing safety protocols until a decision was reached on her request for an exemption. Exhibit "G."

22.    On February 24, 2022, over two months later, DHS denied the plaintiff's request for a religious exemption solely on grounds that granting the exemption "would impose an undue hardship on New Lisbon and its residents because such an exemption for Complainant's position would expose the residents of New Lisbon to harm." See Exhibit "H," p. 4.

23.    DHS specifically noted it did not take a position on whether the plaintiff's religious beliefs were sincerely held. Exhibit "H," p.3.

24.    DHS failed to initiate an interactive accommodation process to explore alternatives such as possible reassignment or additional precautionary measures.

25.    The plaintiff worked for DHS at New Lisbon caring for its residents from the outbreak of the COVID-19 pandemic up to her discharge while observing all required

precautions. DHS has no evidence whatsoever that plaintiff ever exposed anyone at New Lisbon to harm.

26.    There are unvaccinated residents at the New Lisbon facility whose family members or guardians would not give consent to the COVID-19 vaccine and who mingle among the patient population and staff at New Lisbon without even wearing masks.

27.    DHS granted exemptions to other staff members at New Lisbon who allegedly were not involved in direct patient care (See Exhibit "H," pp. 6-7) even though the CMS Vaccine Mandate DHS cites as its primary reason for implementing the vaccine mandate indicated the mandate should apply **regardless of clinical responsibility or patient contact.**" Exhibit "H," p. 3 (original emphasis).

28.    It is scientifically established that even fully vaccinated persons may still contract and spread the COVI-19 virus.

29.    DHS has absolutely no data or factual basis whatsoever to support a finding that plaintiff posed a greater risk to the residents or staff at New Lisbon than unvaccinated residents, unvaccinated administrative staff, or even fully vaccinated residents or staff as long as plaintiff continued in her employment with regular testing, masking, gloves, daily temperature taking or whatever protective measures were available to be employed.

30.    DHS' actions were simply a knee-jerk response based on politics rather than facts.

31.    Because the plaintiff refused to subjugate her religious beliefs to the government mandate and receive the vaccination, DHS fired the plaintiff effective March 31, 2022. Exhibit "H," p. 5. [1]

---

[1]    The sheer idiocy of the DHS decision-making with regard to the plaintiff's employment is illustrated by the timing of her suspension. When the plaintiff would not comply with the vaccine mandate, DHS issued a "Preliminary Notice of Disciplinary Action" (PNDA) on March 18, 2022. Exhibit "H," p. 4. She appeared at her "Loudermill" hearing on March 31, 2022. At that time, the hearing officer found there was "sufficient evidence" to

32.     In response to the plaintiff's internal complaint of religious-based discrimination, the DHS' EEO office conducted its own little dog-and-pony show, but nevertheless came to the same conclusion, to wit, Ms. Harper's presence at New Lisbon posed such a great risk as to cause DHS an undue hardship.  Exhibit "H," p.5.

33.     On July 19, 2022, after a final hearing, DHS upheld the termination of the plaintiff's employment.  Exhibit "H," p. 5.

## COUNT I

34.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of their complaint as though they were set forth at length herein.

35.     Defendant DHS failed to engage in the interactive process to reach a reasonable accommodation of the plaintiffs' religious beliefs.

36.     Defendant failed to identify or demonstrate any undue hardship it would experience if it granted the accommodations set forth in plaintiffs' exemption requests.

37.     Defendant's proffered undue hardship is not real, but speculative and politically motivated.

38.     Any alleged risk posed by unvaccinated staff was merely a pretext for the discrimination and refusal to accommodate and is unsupported by any scientific evidence.

---

warrant an immediate suspension.  Exhibit "H," p. 5.  However, back on December 9, 2021, because the Governor had not yet issued his decree ("EO 283") regarding a mandate, it apparently was perfectly safe for the plaintiff to continue working and caring for the New Lisbon residents.  Accordingly, the hearing officer's finding of an undue hardship supporting the plaintiff's immediate suspension on March 31, 2022, was not based on any new outbreak of COVID amongst the residents at New Lisbon or other data showing masked and tested unvaccinated employees were truly posing a greater risk of harm.  It was based on the Governor's order (i.e. politics).  In some recent cases, courts have finally been willing to see through the veneer of "undue hardship" government agencies are hiding behind and call it what it is.  *Garvey v. City of New York*, Slip. Op. 22335 (N.Y. Sup. Ct. October 24, 2022).

39.     Accordingly, defendant has perpetrated a deliberate and willful violation of Title VII and discriminated against the plaintiff on the basis of her religious beliefs by suspending and ultimately terminating her employment.

40.     As a result of being suspended and later discharged from her employment in violation of Title VII, plaintiff has suffered and will continue to suffer damages including loss of wages and benefits, humiliation, and emotional distress.

WHEREFORE, plaintiff demand entry of judgment in her favor and against the defendant, State of New Jersey Department of Health and Human Services, for compensatory and punitive damages together with interest, attorney fees, costs of suit, and such other relief as the Court may deem just and equitable.

## COUNT II

41.     Plaintiff repeats and realleges the allegations contained in the prior paragraphs of her complaint as though they were set forth at length herein.

42.     Defendant's conduct as set forth herein also violates the New Jersey Law Against Discrimination which, like Title VII, prohibits religious discrimination and requires defendant to accommodate the plaintiffs' religious beliefs.

43.     As a result of being suspended and later discharged from her employment in violation of the NJLAD, plaintiff has suffered and will continue to suffer damages including loss of wages and benefits, humiliation, and emotional distress.

WHEREFORE, plaintiff demands entry of judgment in her favor and against the defendant, State of New Jersey, Department of Human Services, for compensatory and punitive damages together with interest, attorney fees, costs of suit, and such other relief as the Court may deem just and equitable.

## COUNT III

44.    Plaintiff repeats and realleges the allegations contained in the prior paragraphs of her complaint as though they were set forth at length herein.

45.    Defendant DHS' imposition of the vaccine mandate and denial of an exemption to plaintiff on religious grounds violates plaintiff's rights under the Free Exercise Clause of the First Amendment as applied to the states by the Fourteenth Amendment pursuant to 42. U.S.C. §1983.

46.    DHS' implementation of the vaccine mandate as applied to the plaintiff is not the least restrictive measure necessary to achieve the government's health related goals and therefore unduly infringes on the plaintiff's exercise of her religion.

WHEREFORE, plaintiff demands entry of judgment in her favor and against the defendant, State of New Jersey, Department of Human Services, for compensatory damages together with interest, attorney fees, costs of suit, and such other relief as the Court may deem just and equitable.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all issues.

## DESIGNATION OF TRIAL COUNSEL

Scott I. Fegley, Esq., is hereby designated as trial counsel for the plaintiff.

   Scott I. Fegley /s/   SIF1933
Scott I. Fegley, Esq.
Attorney for Plaintiff
NJ Attorney I.D. No. 020871987
420 Sandalwood Avenue
Hamilton Square, NJ 08619
(609) 587-2696

(215) 493-8287

DATE: March 20, 2023