**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOSHIKO HARPER,<br><br>    Plaintiff,<br><br>    v.<br><br>STATE OF NEW JERSEY, DEPT. OF HUMAN SERVICES,<br><br>    Defendant. | Civil Action No. 23-1533 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant State of New Jersey Department of Human Services' ("DHS," or "Defendant") Motion for Summary Judgment. (ECF No. 61.) Plaintiff Toshiko Harper ("Plaintiff") opposed (ECF No. 62), and Defendant replied (ECF No. 63). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion for Summary Judgment is granted.

**I.  BACKGROUND**

  The following facts are drawn from the Statement of Undisputed Material Facts ("SOF") (SOF, ECF No. 61-2), Response to the Statement of Undisputed Material Facts ("DSOF") (DSOF, ECF No. 62-4 at 1-6), Counter-Statement of Undisputed Material Facts ("CSOF") (CSOF, ECF No. 62-4 at 6-16), and Response to the Counter-Statement of Undisputed Material Facts ("RCSOF") (RCSOF, ECF No. 63-1), and are undisputed by the parties unless otherwise noted.

A.  **Factual Background**

This matter arises from Plaintiff's request to receive a religious exemption from DHS's COVID-19 vaccination policy. (*See generally* SOF; DSOF.) Plaintiff became a Christian as an adult in the 1980s, and is "Christian, a believer of Christ, no specific denomination." (SOF ¶ 28; DSOF ¶ 28.) Plaintiff began her employment at New Lisbon Developmental Center ("NLDC") as a Licensed Practical Nurse ("LPN") in 2005 and was subsequently promoted to Senior LPN. (SOF ¶ 3; DSOF ¶ 3.)

DHS's residents or "clients" range in age from their twenties to their eighties and may suffer from medical conditions such as seizure disorders, diabetes, and/or cardiac issues. (SOF ¶ 1; DSOF ¶ 1.) Some of those residents are "highly resistant to wearing a mask." (SOF ¶ 2; DSOF ¶ 2.) Plaintiff's job duties involved direct contact with NLDC's residents. (SOF ¶ 4; DSOF ¶ 4.) As such, Plaintiff was in close physical proximity to the residents and her co-workers performing "hands-on" or "on-the-floor" nursing duties including: (1) administering oral medications; (2) injecting clients with syringes; (3) monitoring vital signs; (4) attending to clients' feeding and medicating through percutaneous endoscopic gastronomy ("PEG") tubes and "flushing the tubes"; (5) administering "rescue meds" through a rectal jelly to treat seizures; (6) assisting physicians with physical examinations, including examinations of clients confined to their beds; and (7) treating and cleaning injuries such as scratches, lacerations, abrasions, and bedsores. (SOF ¶ 5; DSOF ¶ 5.)

Beginning with Executive Order ("EO") 103 on March 9, 2020, and pursuant to the declaration of a public health emergency under the Emergency Health Powers Act, N.J.S.A. 26:13-1, *et. seq.*, and a state of emergency under the New Jersey Civilian Defense and Disaster Control Act, Governor Murphy issued a series of EOs to address the State's response to the

COVID-19 pandemic. (SOF ¶ 6; DSOF ¶ 6.) On November 5, 2021, the U.S. Centers for Medicare and Medicaid Services ("CMS") issued an Interim Final Rule requiring staff in certain federally-funded settings, such as NLDC, to be fully vaccinated against COVID-19 by January 4, 2022. (SOF ¶ 7; DSOF ¶ 7; CSOF ¶¶ 62-63; RCSOF ¶¶ 62-63.) DHS, thereafter, adopted policies implementing the COVID-19 vaccine mandate and issued related notices to its employees. (SOF ¶ 9; DSOF ¶ 9; CSOF ¶¶ 67-68; RCSOF ¶¶ 67-68.) Those policies set forth the State's vaccine requirement procedures, the application process for a religious exemption, and the disciplinary procedures for violating the vaccine policy. (SOF ¶ 9; DSOF ¶ 9.)

In anticipation of receiving a large number of religious exemption requests, DHS created a "Request for Religious Exemption from Vaccination Requirement" form. (SOF ¶ 10; DSOF ¶ 10; CSOF ¶ 69; RCSOF ¶ 69.) To address employees' exemption requests submitted due to the COVID-19 pandemic, each Chief Executive Officer of DHS's five developmental centers was tasked with identifying the job titles at their centers that entailed "direct client contact." (SOF ¶ 21; DSOF ¶ 21; CSOF ¶ 72; RCSOF ¶ 72.) The Senior LPN job was one such title identified at NLDC. (SOF ¶ 22; DSOF ¶ 22.)

Plaintiff did not receive the COVID-19 vaccine. (SOF ¶¶ 11-12; DSOF ¶¶ 11-12.) Plaintiff, however, previously received vaccinations when she enlisted in the U.S. Army Reserves in 1982. (SOF ¶ 13; DSOF ¶ 13.) Additionally, in February 2008 (while employed at NLDC) Plaintiff received a tetanus, or Tdap, vaccine after cutting her hand on a rusty can while working at NLDC. (SOF ¶ 13; DSOF ¶ 13.) Then, in November 2023, Plaintiff received a Tdap vaccine after being bitten by a dog. (SOF ¶ 13; DSOF ¶ 13.) Plaintiff received these vaccine shots to prevent tetanus and as a preventative measure against bacterial and skin infection because she believed she had

3

been exposed to harmful bacteria as a result of the cut and dog bite wounds. (SOF ¶ 14; DSOF ¶ 14.)

On or about December 3, 2021, Plaintiff submitted to DHS a "Request for Religious Exemption from Vaccination Requirement" form, with an accompanying one-page letter. (SOF ¶ 16; DSOF ¶ 16.) On the form she stated that: (1) her "sincerely held belief is God created [her] with a well-functioning immune system that was not to be tempered [sic] with"; (2) she "will be held accountable to God if [she] defile[s] this uniquely created temple"; (3) "to violate [her] temple by injecting any vaccines would mean [she] decided to lay aside [her] convictions concerning what [she has] been taught and practice regarding the Word of God"; and (4) "[w]hen [she] accepted Jesus Christ into [her] heart as [her] Lord and Savior that's when [her] body became a temple that should not [] be defiled." (SOF ¶ 16; DSOF ¶ 16; Ex. M to Pl.'s Opp'n Br ("Exemption Request"), ECF No. 62-17.)

On February 24, 2022, DHS informed Plaintiff that it denied her religious exemption request. (SOF ¶ 23; DSOF ¶ 23.) DHS provided Plaintiff with Preliminary and Amended Preliminary Notices of Disciplinary Action containing disciplinary charges of violation of administrative procedures and/or regulations involving safety and security, violation of a rule, regulation, policy, procedure, order or administration decision and other charges and the potential disciplinary action of removal. (SOF ¶ 24; DSOF ¶ 24.) Plaintiff appealed the charges, which resulted in a hearing on July 19, 2022, before a DHS hearing officer, who upheld the charges and the removal on July 28, 2022. (SOF ¶ 25; DSOF ¶ 25.) On July 29, 2022, DHS issued a Final Notice of Disciplinary Action to Plaintiff with the disciplinary action of removal, effective March 31, 2022. (SOF ¶ 26; DSOF ¶ 26.)

4

B. **Procedural Background**

Plaintiff filed a Complaint bringing three counts. (*See generally* Compl., ECF No. 1.) Plaintiff subsequently filed the operative Amended Complaint asserting the following claims: (1) failure to accommodate Plaintiff's religious beliefs pursuant to Title VII (Count I); (2) disparate treatment in violation of Title VII (Count II); (3) failure to accommodate Plaintiff's religious beliefs pursuant to the NJLAD (Count III); and (4) disparate treatment in violation of Title VII (Count IV). (Am. Compl., ECF No. 35.) Defendant filed a Motion to Dismiss (Def.'s Mot. to Dismiss, ECF No. 37), Plaintiff opposed (Pl.'s Opp'n to Mot. to Dismiss, ECF No. 41), and Defendant replied (Def.'s Reply to Mot. to Dismiss, ECF No. 42). The Parties thereafter reached a stipulation whereby Defendant withdrew its Motion to Dismiss and Count III and Count IV of the Amended Complaint were dismissed. (*See generally* Stip. and Order, ECF No. 54.)

Following the close of fact discovery on September 2, 2025, Defendant filed the instant motion seeking summary judgment in its favor on all of Plaintiff's claims. (Def.'s Mot. for Summary Judgment, ECF No. 61.) In her opposition brief, Plaintiff withdrew Count II[1] of her Amended Complaint leaving only her Title VII failure to accommodate claim. (Pl.'s Opp'n Br. 10, ECF No. 62.) Defendant's Motion for Summary Judgment is now ripe for resolution.

II. **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir.

---

[1] The Court, accordingly, grants summary judgment in Defendant's favor on Count II of Plaintiff's Amended Complaint.

2000). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a summary judgment motion, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249-50. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary

judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III. DISCUSSION

Defendant moves for summary judgment on Plaintiff's remaining claim (Count I)[2] that Defendant violated Title VII by failing to accommodate her religious exemption request. (*See* Def.'s Moving Br. 21-27, 35-39, ECF No. 61-1; *see generally* Def.'s Reply Br., ECF No. 63.) Defendant argues that: (1) the record and applicable law support its undue hardship determination; and (2) Plaintiff has not established that her anti-vaccine beliefs are religious in nature under Third Circuit precedent. (Def.'s Moving Br. 35-39; Def.'s Reply Br. 1-13.)

### A. Failure to Accommodate

Title VII makes it an unlawful employment practice for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. § 2000e-2(a)(1). Pursuant to the statutory definitions, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

To establish failure to grant a religious accommodation under Title VII, Plaintiff must show that: (1) she held a sincere religious belief that conflicted with a job requirement; (2) she informed

---

[2] Because Plaintiff withdrew Count II of her Amended Complaint and the Court grants summary judgment in favor of Defendant on that count, it only addresses Defendant's arguments regarding the remaining count, Count I.

7

her employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement. *Smith v. City of Atlantic City*, 138 F.4th 759, 774 (3d Cir. 2025) (citations omitted). "The burden then shifts to the employer to show that it either made a good faith effort to accommodate the religious belief, or the accommodation would work an undue hardship upon the employer." *Boodoo v. AMP Home Care LLC*, No. 24-1056, 2025 WL 2840801, at *11 (W.D. Pa. Oct. 7, 2025) (citing *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009)).

It is not disputed that Plaintiff was terminated solely for failing to comply with the vaccine policy, nor is it disputed that Defendant was informed of the conflict between Plaintiff's beliefs and the policy. (SOF ¶¶ 23-26; DSOF ¶¶ 23-26.) These undisputed facts satisfy the second and third elements. *See Boodoo*, 2025 WL 2840801, at *11. This matter, accordingly, turns on whether there is a genuine dispute that: (1) Plaintiff's anti-vaccination beliefs are sincerely held religious beliefs;[3] and, if so, (2) whether accommodating those beliefs presented an undue hardship for Defendant. Because it is a threshold issue, the Court first addresses whether Plaintiff's anti-vaccination beliefs are sincerely religious.

### B. Whether Plaintiff's Beliefs are Sincerely Held Religious Beliefs

Defendant argues that Plaintiff failed to establish that her anti-vaccine beliefs that were the subject of her exemption request are religious in nature. (Def.'s Moving Br. 35-39; Def.'s Reply

---

[3] Plaintiff contends that Defendant is estopped from arguing that Plaintiff's religious beliefs are not genuine because Defendant did not challenge the "genuineness and sincerity of" Plaintiff's religious beliefs in its position statement to the EEOC, or in its answer. (Pl.'s Opp'n Br. 11-12.) However, there is no preclusive effect here based on the arguments raised by Defendant in the EEOC charge because there was no final decision made and administrative decisions that are not reviewed by a state or federal court "may not preclude . . . subsequent Title VII claim[s]." *Toney v. Select Specialty Hosp.*, 142 F. Supp. 3d 494, 501 (S.D. Miss. 2015) (citations omitted). Moreover, Defendant is not challenging the genuineness or sincerity of Plaintiff's beliefs, but whether Plaintiff has established that her beliefs were sincerely held religious beliefs pursuant to Title VII as a matter of law under Third Circuit precedent. (*See* Def.'s Moving Br. 35-39.)

Br. 10-12.) Defendant contends that the evidence establishes that Plaintiff's beliefs are personal or moral and principally involve concerns about the vaccine's health effects. (Def.'s Moving Br. 37-38.) Defendant submits that Plaintiff failed to establish that her vaccine beliefs are comprehensive in nature because she received vaccinations as an adult, including Tdap shots in 2008 and 2023. (*Id.* at 38.) In opposition, Plaintiff argues that questions of fact preclude summary judgment on the issue because her beliefs are rooted in her Christian faith, and her beliefs are sincere. (Pl.'s Opp'n Br. 12-20.)

"Whether a belief is sincerely held is a question of fact." *Gray v. Main Line Hosps., Inc.*, 717 F. Supp. 3d 437, 446 (E.D. Pa. 2024) (quoting *Shields v. Main Line Hosps., Inc.*, 700 F. Supp. 3d 265, 270-71 (E.D. Pa. 2023)). "While no court should inquire into the validity or plausibility of a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protections guaranteed thereunder." *Id.* (internal quotation marks and citation omitted) (quoting *Aliano v. Township of Maplewood*, No. 22-5598, 2023 WL 4398493, at *5 (D.N.J. July 7, 2023)). "'The notion that all of life's activities can be cloaked with religious significance' cannot transform an otherwise secular idea into a religious belief." *Maher v. Bayhealth Med. Ctr., Inc.*, No. 22-1551, 2024 WL 406494, at *2 (D. Del. Feb. 2, 2024) (quoting *Africa v. Commonwealth*, 662 F.2d 1025, 1035 (3d Cir. 1981), *aff'd*, 2024 WL 4799870 (3d Cir. Nov. 15, 2024), *cert. denied*, 145 S. Ct. 2848 (2025))). "[T]he very concept of ordered liberty precludes allowing [a plaintiff], . . . a blanket privilege to make [her] own standards on matters of conduct in which society as a whole has important interests." *Africa*, 662 F.2d at 1031 (internal quotation marks and citation omitted). The Court's focus is therefore on whether there is a genuine dispute of material fact that Plaintiff's beliefs are religious

9

in nature or "essentially political, sociological, or philosophical." *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017) (citation omitted).

To that end, the Third Circuit has adopted a three-pronged approach for determining whether beliefs are religious. *See Kennedy v. PEI-Genesis*, 719 F. Supp. 3d 412, 417 (E.D. Pa. 2024) (quoting *Africa*, 662 F.2d at 1032), *aff'd*, No. 24-1563, 2025 WL 602159 (3d Cir. Feb. 25, 2025). Specifically, it has instructed that a religion: (1) "addresses fundamental and ultimate questions having to do with deep and imponderable matters;" (2) "is comprehensive in nature [and] . . . consists of a belief-system as opposed to an isolated teaching"; and (3) "often can be recognized by the presence of certain formal and external signs." *Id.* (quoting *Africa*, 662 F.2d at 1032).

As to "the first factor, beliefs address fundamental and ultimate questions when they consider and attempt to come to terms with what could best be described as ultimate questions- questions having to do with, among other things, life and death, right and wrong, good and evil." *Blackwell v. Lehigh Valley Health Network*, No. 22-3360, 2023 WL 362392, at *5 (E.D. Pa. Jan. 23, 2023) (internal quotation marks and citation omitted). As to the second factor, beliefs are comprehensive in nature when they "consist of something more than a number of isolated, unconnected ideas." *Gray*, 717 F. Supp. 3d at 446 (internal quotation marks and citation omitted). The beliefs, therefore, "cannot be generally confined to one question or one moral teaching" but must have "a broader scope" and "lay[] claim to an ultimate and comprehensive truth." *Id.* at 447 (internal quotation marks and citation omitted). As to the third factor, courts must "look to any formal, external, or surface signs that may be analogized to accepted religions such as formal services, ceremonial functions, the existence of clergy, structure and organization, efforts at propagation, observation of holidays and other similar manifestations associated with the

traditional religions." *Blackwell*, 2023 WL 362392, at *5 (internal quotation marks and citation omitted).

Here, Plaintiff's request for a religious exemption indicates that her request was premised on her beliefs that: (1) "God created [her] with a well-functioning immune system that was not to be tempered [sic] with"; (2) she is "a Christian who believes in the Holy Bible"; (3) her "belief system is faith and spiritually based on the Holy Bible"; (4) she will "be held accountable to God if [she] defile[s] [her] uniquely created temple"; (5) these are her "personal faith based, Holy Ghost inspired beliefs[,]"; (6) her "relationship has no denominations, affiliations, etc.[;]" (7) her faith is "all about [her] personal relationship with [her] Savior"; (8) her "religious belief[s] prevent[ her] from receiving . . . '[a]ll other vaccines'"; and (9) that "from [her] spiritual perspective 'Man'" does not "have [the] right to mandate [her] to inject any substance into [her] body/temple that would cause [her] to violate [her] belief system." (*See generally* Exemption Request.)

Here, while Plaintiff has established that she is a Christian, her belief that she was "created [] with a well-functioning immune system not to be t[a]mpered with" is more of an "isolated moral teaching" or medical belief as opposed to a comprehensive system of beliefs about fundamental or ultimate matters. (Exemption Request); *Shields*, 700 F. Supp. 3d at 272 (finding, on a motion to dismiss, that a plaintiff was unable to show that her "natural immunity beliefs were religious in nature" and that her "argument that God bestowed natural immunity upon her" was an "isolated moral teaching" and "not a comprehensive system of beliefs about fundamental or ultimate matters").

Moreover, it is undisputed that Plaintiff received Tdap vaccines in 2023 and 2008. (SOF ¶ 13; DSOF ¶ 13.) This further evidences that Plaintiff's belief is not "comprehensive in nature" but an "isolated, unconnected idea[]" in that Plaintiff was selective in deciding which vaccines she

11

would and would not receive based on her belief that "God created [her] with a well-functioning immune system that was not to be tempered [sic] with[.]" (Exemption Request); *Gray*, 717 F. Supp. 3d at 446; *Cleckner v. 3M Co.*, No. 22-2055, 2025 WL 2524849, at *7 (M.D. Pa. Sep. 2, 2025) (finding that plaintiff's beliefs against altering her immune system were not comprehensive in nature because they were only applicable to the COVID-19 vaccine); *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024 WL 643543, at *5 (E.D. Pa. Feb. 15, 2024) (finding, on a motion to dismiss, that plaintiff's belief that, among other things, her body was a "temple of His Holy Spirit" was "not a part of a Christian's 'comprehensive system of beliefs about fundamental or ultimate matters,'" but was more of "an isolated moral teaching" (citations omitted)); *Bartholomew v. Washington*, 725 F. Supp. 3d 1225, 1233 (W.D. Wash. 2024) (dismissing plaintiff's complaint because, among other things, plaintiff previously received other vaccinations, and focused his belief on his own natural immunity which did not establish "a bona fide religious belief against receiving the C[OVID]-19 vaccine"); *see Fallon*, 877 F.3d at 492 (finding that plaintiff's belief that he should not do harm to his body was a "general moral commandment"). Plaintiff's view, moreover, "is not manifested in any formal or external signs." *Ritter*, 2024 WL 643543, at *5.

Plaintiff, accordingly, cannot satisfy the second or third *Africa* factors. *Id.*[4] The Court therefore finds that there is no genuine dispute of fact regarding whether Plaintiff's anti-vaccination beliefs were sincerely held religious beliefs. The Court, consequently, finds that Plaintiff has failed to establish a prima facie failure to accommodate claim pursuant to Title VII.[5]

## IV.   CONCLUSION

Viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in her favor, the Court finds that no genuine dispute of material fact exists as to Plaintiff's failure to accommodate claim under Title VII (Count I). For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The Court will issue an order consistent with this Memorandum Opinion.

/s/ *Michael A. Shipp*
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

DATED: 2/17/, 2026

---

[4] Plaintiff argues that this Court in *Alino*, 2023 WL 4398493, and courts in *Troutman v. Teva Pharmaceuticals USA, Inc.*, No. 22-395, 2024 WL 3635303 (E.D. Tex. June 25, 2024) and *Glover v. Children's Hospital of Philadelphia*, No. 23-463, 2025 WL 1527494 (E.D. Pa. May 29, 2025), have ruled that "a plaintiff's connection of an anti-vaccination belief to a belief in the Holy Spirit at the very least creates a question of fact." (Pl.'s Opp'n Br. 17-19.) What is undisputed and distinguishable here, however, is the fact that Plaintiff received Tdap vaccines in 2023 and 2008. (SOF ¶ 13; DSOF ¶ 13.) *Aliano*, moreover, was decided on a motion to dismiss, and in all three cited cases, at least some of the plaintiffs' exemption requests indicated their objection to the COVID-19 vaccination's use of fetal stem cells based on their anti-abortion beliefs—which is not at issue here. *See Aliano*, 2023 WL 4398493, at *7 (discussing one plaintiff's belief that he could not take the vaccine because of its "origins in abortion"); *Troutman*, 2024 WL 3635303, at *2 (detailing plaintiff's opposition to receiving a COVID-19 vaccine on several grounds including the vaccine's use of "fetal cell lines derived from elective abortions"); *Glover*, 2025 WL 1527494, at *5 (noting plaintiff's explanation that the "use of aborted fetal cells during the [COVID-19] vaccine's development went against his religion").

[5] Because the Court finds that Plaintiff has failed to establish a prima facie failure to accommodate claim, it does not reach Defendant's undue hardship arguments.